S. LANE TUCKER
United States Attorney

SETH M. BEAUSANG
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: seth.beausang@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>    vs.<br><br>ONE NILE CROCODILE (*CROCODYLUS NILOTICUS*) HERMÈS DESIGNER HANDBAG,<br><br>                     Defendant. | 3:24-cv-00229-HRH<br><br>**VERIFIED COMPLAINT FOR FORFEITURE IN REM** |

NATURE OF THE ACTION

This is a civil action to forfeit defendant Nile crocodile (*Crocodylus niloticus*) Hermès designer handbag (the "defendant wildlife specimen"), which is subject to forfeiture pursuant to 16 U.S.C. § 1540(e)(4)(A) because it is wildlife possessed, sold, transported, carried, shipped, or imported contrary to the provisions of the Endangered Species Act, 16 U.S.C. § 1538, and regulations made pursuant thereto.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1345, 1355 and 16 U.S.C. §§ 1540(c) and (e).

2. This action is timely filed in accordance with 18 U.S.C. § 983(a)(3)(A).

3. Venue in the District of Alaska is proper because defendant wildlife specimen was seized in and is presently located in Anchorage, Alaska. 28 U.S.C. §§ 1355(b) and 1395.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant wildlife specimen is one Hermès designer handbag made of Nile crocodile (*Crocodylus niloticus*) that was imported from Thailand to the United States. Defendant is presently in the custody the United States Fish and Wildlife Service ("USFWS") at its Anchorage offices.

## ENDANGERED SPECIES ACT AND INTERNATIONAL TREATY OBLIGATIONS

6. The Endangered Species Act (the "ESA") provides for the conservation of threatened and endangered species of fish, wildlife, plants, and the ecosystems upon which the species depend; it further provides for achieving the purposes of various treaties and conventions entered into by the United States addressing species conservation, including, *inter alia*, the Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087; TIAS 8249, Mar. 3, 1973 ("CITES"). 16 U.S.C. § 1531.

7. CITES is an international treaty that establishes an international system of import/export regulations to protect listed species of plants and animals (including any recognizable part or derivative thereof) from over-exploitation through international trade (whether commercial or noncommercial). Plant and animal species may be listed in Appendix I, Appendix II, or Appendix III, each of which provides a different level of protection and is subject to different requirements. Different levels of trade regulation are provided depending on the status of the listed species and the contribution trade makes to the decline of the species. The trade restrictions established by CITES are enforced through a system of permits and certificates. Currently there are 184 Parties to CITES, including the United States and Thailand.

8. Under the ESA, all fish or wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of the Act, and any regulation made pursuant thereto, shall be subject to the forfeiture to the United States. 16 U.S.C. § 1540(e)(4)(A).

9. Under the ESA, the term "wildlife" includes any member of the animal kingdom or the dead body or parts thereof. 16 U.S.C. § 1532(8).

10. Under the ESA, it is unlawful to engage in trade in any specimens contrary to CITES or to possess any specimens so traded. 16 U.S.C. § 1538(c).

11. Under the ESA, the term "specimen" means any wildlife or plant, whether live or dead. This term includes any readily recognizable part, product, or derivative unless otherwise annotated in the Appendices to CITES. 50 C.F.R. § 23.5.

3

12. Under CITES, it is unlawful to import into the United States any specimens listed in Appendix I or Appendix II without a valid export permit from the country of origin or a re-export certificate from the country of re-export, unless limited, defined exemptions apply. CITES, Article IV; 50 C.F.R. §§ 23.13 and 23.20.

13. The Nile crocodile (*Crocodylus niloticus*) is listed in the Appendices to CITES, incorporated through 50 C.F.R. § 23.91, with some populations listed on Appendix II and the remaining populations on Appendix I.

14. To be valid, a CITES document must either be original or true copy. 50 C.F.R. § 23.26(b). In addition, a CITES document must meet the requirements set out in 50 C.F.R. §§ 23.23-23.26. These requirements are intended to prevent the use of false or invalid permits for fraudulent purposes or to evade export controls.

15. In addition, all CITES documents must contain a validation or certification of the actual quantity of specimens exported or re-exported (i) using the same units of measurement as those on the CITES document and (ii) validated or certified by the stamp or seal and signature of the inspecting authority at the time of export or re-export. 50 C.F.R. § 23.23(c)(21). Validation confirms that the contents of the shipment match the description of the specimens provided on the CITES document and that the actual quantity of CITES specimens in a shipment does not exceed the quantity authorized for trade on the CITES document. 50 C.F.R. § 23.26(c)(18).

16. Under the ESA, it is also unlawful to import any threatened species of wildlife without a permit from USFWS. *See* 16 U.S.C. § 1538(a)(1)(G); 50 C.F.R. §§ 17.31(a), 17.32(a).

4

17. The Nile crocodile (*Crocodylus niloticus*) is listed as a threated species under the ESA. 50 C.F.R. § 17.42(c)(1)(i)(E).

18. Under the ESA, the term "import" means "to bring, ship, or carry a specimen into a country" and "to land on, bring into, or introduce into, or attempt to land on, bring into, or introduce into any place subject to the jurisdiction of the United States, whether or not such landing, bringing, or introduction constitutes an importation within the meaning of the tariff laws of the United States." 50 C.F.R. §§ 14.4, 23.5.

19. Under the ESA, it is also unlawful to import or cause to be imported any wildlife without filing with the U.S. Fish and Wildlife Service a completed Form 3-177, Declaration for Importation or Exportation of Fish or Wildlife, unless certain limited exceptions apply. 16 U.S.C. § 1538(e) and (g); 50 C.F.R. § 14.61; *see also* Form 3-177 *available at* http://www.fws.gov/le/declaration-form-3-177.html.

20. The ESA requires that various documents, including permits or other documents required by the United States and the country of export, accompany all wildlife imported into the United States and be made available to a Service officer or Customs officer before a Service officer will clear wildlife for release from detention by Customs officers. 50 C.F.R. § 14.52(c).

## FACTS

21. On or before May 3, 2024, the defendant wildlife specimen was imported to the United States from Thailand through the Federal Express international package sorting hub at Ted Stevens International Airport, Anchorage, Alaska (the "Federal Express facility").

5

22. The defendant wildlife specimen was imported in a parcel addressed from exporter Passion Trading in Thailand to MAC (understood to stand for Madison Avenue Couture) in the United States and was traveling under air waybill number 7762 1646 0428.

23. On or about May 6, 2024, a USFWS Wildlife Inspector from the USFWS Office of Law Enforcement physically inspected at the Federal Express facility the parcel containing the defendant wildlife specimen.

24. The air waybill accompanying the parcel identified Madison Avenue Couture's address as 50 w 57th Street Floor 5, New York, NY 10019, described the contents as "used leather bag," and stated the carriage and customs value as $500.00 USD.

25. Upon inspection of the contents of the parcel, the USFWS Wildlife Inspector found a handbag accompanied by a commercial invoice.

26. The commercial invoice, in pertinent part, (i) identified Passion Trading as the exporter and MAC as the consignee; (ii) described the contents as "used leather bag" originating in Thailand; and (iii) the total value of the contents as $500 USD.

27. The USFWS Wildlife Inspector has determined (based upon a visual examination, accompanying documents and packaging, and other means) that the handbag – identified herein as the defendant wildlife specimen – contained the parts, products, or derivatives of a specimen from a population of Nile crocodile (*Crocodylus niloticus*) listed in Appendix II of CITES.

28. No CITES export or re-export certificate authorizing the export or re-export of the defendant wildlife specimen from Thailand to the United States accompanied the defendant wildlife specimen or was otherwise presented to USFWS.

29. No USFWS permit for the importation of a threatened species of wildlife accompanied the defendant wildlife specimen or was otherwise presented to USFWS.

30. No Wildlife Declaration had been filed with the USFWS for the defendant wildlife specimen.

31. The USFWS Wildlife Inspector seized the defendant wildlife specimen on or about May 9, 2024, at the Federal Express facility for violations of the ESA and its implementing regulations.

32. The seized defendant wildlife specimen was determined pursuant to 50 C.F.R. § 12.11 to be of a value of $73,184.00.

33. On July 24, 2024, importer Madison Avenue Couture, through its Vice President - Finance, submitted a seized asset claim form requesting "that the Government file a complaint for judicial forfeiture of the seized property."

34. The claim stated, *inter alia*, that an agreement to purchase defendant wildlife specimen was made between Passion Trading and Madison Avenue Couture, and that Passion Trading shipped the defendant wildlife specimen by Federal Express to Madison Avenue Couture at a New York, New York address.

35. The claim also stated that the exporter labelled the shipment as a leather handbag, and that "[h]ow the Seller labeled the item was out of MAC's control."

//

7

CLAIM FOR RELIEF

16 U.S.C. § 1540(e)(4)(A)
(forfeiture of all wildlife specimens possessed, traded or exported
contrary to the Endangered Species Act)

36. The United States incorporates by reference the allegations in paragraphs 1-35 as though fully set forth herein.

37. Importation of the defendant wildlife specimen violated the ESA in that:

   a. No valid export permit from the country of origin or a re-export certificate from the country of re-export accompanied the defendant wildlife specimen or was otherwise presented to USFWS, a violation of CITES;

   b. No permit from USFWS for the importation of a threatened species accompanied the defendant wildlife specimen or was otherwise presented to USFWS; and

   c. No Form 3-177, Declaration for Importation or Exportation of Fish or Wildlife, was filed for the importation of the defendant wildlife specimen.

38. The defendant wildlife specimen is therefore "contraband or other property that it is illegal to possess." 18 U.S.C. § 983(d)(4); *see also Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1208 (N.D. Cal. 2009); *United States v. 144,774 pounds of Blue King Crab*, 410 F.3d 1131, 1135 (9th Cir. 2005).

39. For all of these reasons, the defendant wildlife specimen is subject to forfeiture to the United States pursuant to 16 U.S.C. § 1540(e)(4)(A).

WHEREFORE, Plaintiff United States of America prays that:

A. A Warrant In Rem issue for the arrest of the defendant wildlife specimen;

B. That due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

C. That judgment be entered declaring that the defendant wildlife specimen be forfeited to the United States of America for disposition according to law, and

D. For such relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 17th day of October 2024, in Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ *Seth Beausang*
SETH BEAUSANG
Assistant U.S. Attorneys

9

Case 3:24-cv-00229-HRH   Document 1   Filed 10/17/24   Page 9 of 11

# VERIFICATION

I, Chris Andrews, hereby verify and declare under the penalty of perjury that I am employed as a Supervisory Wildlife Inspector with the U.S. Fish and Wildlife Service, that I have read the foregoing Verified Complaint for Forfeiture In Rem and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief. The sources of my knowledge and information and the grounds for my belief include official files and records of the United States, publicly available files and historical information, files and records compiled by local and state law enforcement agencies, information supplied to me by other law enforcement officers and other witnesses, as well as my investigation in this case, together with others, as well as my training and experience.

Executed this 17th day of October 2024, in Anchorage, Alaska.

CHRISTOPHER ANDREWS
Digitally signed by CHRISTOPHER ANDREWS
Date: 2024.10.17 14:09:59 -08'00'
_____
Chris Andrews
Supervisory Wildlife Inspector
U.S. Fish and Wildlife Service

Declarations have the same legal force as affidavits. 28 U.S.C. § 1746

10

Case 3:24-cv-00229-HRH   Document 1   Filed 10/17/24   Page 10 of 11

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2024,
a true and correct copy of the foregoing
was served on the following persons who
reasonably appeared to be a potential claimant
on the facts known to the government,

**by certified mail on:**

Madison Avenue Couture Inc.
c/o Michael Nuremberg
50 W. 57th St.
New York, NY, 10019

**and by regular mail on:**

Rattapoom Sotayakul
Passion Trading LTD Partnership
101/279 Lumpini Place Rama9
Huay Kwang
Bangkok, Thailand, 10240

Passion Trading
99/120 Kingkaew 31/3 Rachaheva Bangplee
Samutprakarn, Thailand 10540


s/ *Seth Beausang*
Office of the U.S. Attorney